## AFFIDAVIT

I, Colin Simons, being duly sworn, depose and state as follows:

1. I am a Special Agent with the Federal Bureau of Investigation (FBI), currently assigned to the Burlington, Vermont Resident Agency of the Albany Division. I have been a Special Agent for approximately 10 years. I am responsible for working a variety of criminal violations, to include violent crimes and gangs. I have completed the seventeen-week training program provided by the FBI, which includes instruction in the investigation of various criminal offenses. In addition to the formal training I have received from the FBI, I have also completed the Frances Glessner Lee Seminar in Homicide Investigations, the University of Tennessee's Human Remains Recovery School, a Department of Justice Asset Forfeiture Program, and a Forensic Cell Phone Data Recovery course. I have also been the affiant to numerous federal complaints and search warrants pertaining to violent crime and drugs. Furthermore, I have participated in dozens of arrests and search warrants relating to violent crime and drugs. As a Special Agent, I am authorized to investigate violations of laws of the United States and to execute warrants issued under the authority of the United States.

2. I submit this affidavit in support of a finding of probable cause to believe that Elliot McIver committed the offense of possession with intent to distribute cocaine base (commonly referred to as crack or crack cocaine), a schedule II controlled substance, in Vermont on or about October 28, 2013. This affidavit refers to cocaine base as crack or crack cocaine. This affidavit does not contain every fact known to me about this investigation. Rather, I have included those facts which I believe are necessary to establish probable cause to believe that McIver committed the foregoing offense. The information in this affidavit comes from my personal knowledge, my

1

investigation of McIver, my training and experience, and information I have learned from other state and federal law enforcement officers involved in the investigation.

3. On October 28th, 2013, the Burlington Police Department (BPD) received a tip from an individual who identified himself/herself, and provided his/her phone number, but wished to remain anonymous. The informant advised that an Elliot McIver would be arriving to the "Megabus" bus stop at the University of Vermont (UVM) campus, in Burlington, Vermont, at approximately 2300 hours the evening of October 28, 2013. The informant also stated that McIver was traveling to Burlington from New York. The informant further advised that McIver would be in possession of illegal narcotics upon arrival in Burlington, and would be traveling to an area in Burlington that is known to law enforcement as a place where crack cocaine and heroin are distributed. BPD told me about the tip.

4. After receiving the tip, I reviewed McIver's criminal record, which shows that he has, among other things, a prior felony conviction for escape on October 21, 2010, a felony conviction for cocaine sale/delivery on April 20, 2005, and a federal felony conviction in this District for sale of cocaine on April 29, 1999.

5. Law enforcement officers from the Winooski Police Department (WPD), BPD, and the FBI met at the WPD at approximately 2200 for a briefing concerning McIver. Law enforcement from each agency set up surveillance around the Megabus drop off station at the UVM campus in anticipation of McIver's arrival. On October 28, 2013, at approximately 2305 hours, the "Megabus" arrived at its drop off location on the UVM campus. After the arrival of the Megabus, Det. David Nease of WPD observed a male Det. Nease recognized, from a mug shot photo, as McIver, in the area outside the Megabus. Officer Benjamin Adams of WPD, began walking behind McIver headed towards the parking lot where Det. Nease was stationed.

Det. Nease approached McIver as Officer Adams called him by "Elliot," and asked to speak with him. McIver answered to the name Elliot and agreed to speak with us. Officer Adams and Det. Nease informed McIver why they had stopped him and informed him that they had received information that he may be in possession of illegal narcotics. McIver laughed and advised that he did not have any illegal drugs and we were welcome to search his back pack, which he was carrying, and his person. McIver even began unbuckling his belt to take down his pants. McIver was advised that was not necessary, nor would police allow him to do so in public.

6. Det. Jamie Morris of BPD began the search of Mr. McIver's back pack as law enforcement continued to speak to him and answer his questions. McIver began sweating profusely, and when questioned about this by Officer Adams, McIver advised that he badly needed to use a restroom. As Officer Adams began to search McIver's person, with consent, McIver fainted and had to be helped to his feet. McIver was uninjured as Officer Adams and Det. Nease assisted him back to his feet. McIver was asked if he needed or wanted medical attention and he said he did not. Officer Adams asked McIver again if he consented to a search of his person, and McIver again agreed. Officer Adams located a baggie of suspected crack cocaine in McIver's right front pocket. Through his training and experience, Det. Nease readily identified the substance as crack cocaine based on its color, shape, and consistency. McIver was also in possession of $56.00 cash, cigarettes, and two cell phones. The information in paragraphs 5 and 6 of this affidavit was provided to me by Dets. Nease and Morris and Officer Adams.

7. McIver was placed in handcuffs and transported to the South Burlington Police Department (SBPD) for processing. At the SBPD, I interviewed McIver along with Det. David Nease of WPD. McIver waived Miranda, agreeing to speak with us. Several topics were

discussed in the interview, but McIver stated numerous times that "this is on me," meaning the crack cocaine belonged to him and it was his responsibility. McIver also stated, in substance, "you can't be caught for distribution," and "you can't be caught with 50 grams." When asked what types of narcotics, if any, he personally used, McIver responded: "marijuana and molly." He did not mention crack cocaine or cocaine.

8. At SBPD the suspected crack cocaine was weighed and field tested by Officer Adams. The weight was approximately 30.32 grams with packaging, and it field tested positive for the presence of cocaine.

9. I know from my training and experience that individuals involved in the drug trade commonly travel from New York to Vermont, via the Megabus, to sell drugs in Vermont. I have been involved in the investigation of several such cases over the last 6 months. Drug traffickers commonly travel to Vermont from New York because they can often sell drugs purchased in New York at a profit in Vermont.

10. In my training and experience, the possession of 30 grams of crack cocaine is consistent with intent to distribute. Typically, personal use amounts of crack are much less, often around .5 grams or 1 gram.

11. Based on my training and experience, I know that persons who participate in the distribution of controlled substances frequently use cellular telephones, among other communications devices, to coordinate their unlawful activities and to maintain contact with suppliers and consumers of illegal drugs. In my experience, individuals involved in the drug trade commonly have more than one cell phone, and often use one phone for drug business and one for personal business.

Dated at Burlington, in the District of Vermont, this 29 day of October, 2013.

_____
Colin Simons
Special Agent, Federal Bureau of Investigation

Sworn to and subscribed before me this 29th day of October, 2013

_____
HON. JOHN M. CONROY
United States Magistrate Judge